IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| RICHARD ALLEN MASTERSON, | § | |
| Petitioner, | § | |
| | § | |
| v. | § | No. 4:09-cv-02731 |
| | § | *CAPITAL CASE* |
| WILLIAM STEPHENS, | § | |
| Director, Texas Department | § | |
| of Criminal Justice, | § | |
| Correctional Institutions Division, | § | |
| Respondent. | § | |

**RESPONDENT STEPHENS'S SUPPLEMENTAL ANSWER
AND MOTION FOR SUMMARY JUDGMENT**

This is a federal habeas corpus proceeding initiated by Petitioner Richard Allen Masterson, a death-sentenced Texas inmate, pursuant to 28 U.S.C. § 2254.  On August 17, 2009, Masterson filed a federal petition for writ of habeas corpus.  Docket Entry (DE) 1.  The Director filed an answer and motion for summary judgment on October 12, 2010.  DE 5.  On November 3, 2011, this Court stayed these proceedings pending the outcome of the Supreme Court's decisions in *Maples v. Thomas*, 132 S.Ct. 912 (2012), and *Martinez v. Ryan*, 132 S.Ct. 1309 (2012).  DE 26.  Following those decisions, the Court lifted the stay on June 27, 2012.  DE 34.  Masterson filed an amended petition on April 8, 2013.  DE 52.  The instant supplemental answer and motion for summary judgment follows.

## STATEMENT OF THE CASE

Masterson was convicted and sentenced to death for the murder of Darin Shane Honeycutt while in the course of committing and attempting to commit robbery.  1 CR 9; 2 CR 306, 314-18.[1]  The Texas Court of Criminal Appeals affirmed Masterson's conviction and sentence in a published opinion on February 2, 2005.  *Masterson v. State*, 155 S.W.3d 167 (Tex. Crim. App. 2005), *cert. denied*, 546 U.S. 1169 (2006).

Masterson filed a state application for writ of habeas corpus in the trial court on February 26, 2004.  SHCR 2.  On March 13, 2008, the trial court submitted findings of fact and conclusions of law recommending that Masterson be denied relief.  *Id.* at 158-75.  The Court of Criminal Appeals adopted the trial court's findings and conclusions and denied Masterson habeas relief on August 20, 2008.  *Ex parte Masterson*, No. 59,481-01 at cover and Order.

As stated, Masterson filed a federal habeas petition on August 17, 2009.  This Court subsequently stayed these proceedings.  During the stay, Masterson returned to state court and filed a successive state habeas

---

[1]    "CR" refers to the clerk's record of pleadings and documents filed with the court during trial, preceded by volume number and followed by page number(s). "RR" refers to the state record of transcribed trial proceedings, preceded by volume number and followed by page number(s).  "SX" refers to State's Exhibit, followed by exhibit number(s).  "SHCR" refers to the state habeas record, followed by page number(s).

application.   The Court of Criminal Appeals dismissed the application for abuse of the writ on December 19, 2012.  *Ex parte Masterson*, No. 59,481-02 at cover and Order.  Masterson then filed an amended federal petition on April 8, 2013.  DE 53.

## ARGUMENT[2]

### I.   Masterson's Claim that Counsel Was Ineffective for Failing to Present Evidence Negating *Mens Rea* Is Time-Barred, Procedurally Defaulted, and Meritless.

In his first supplemental claim (ground for relief eleven), Masterson alleges that trial counsel was ineffective for failing to introduce at the guilt-innocence phase of trial, evidence of organic brain dysfunction in order to negate *mens rea*, which would have raised the issue of a lesser-included offense.  Amended Petition at 111-12.  Masterson's claim is premised on the Court of Criminal Appeals's decision in *Jackson v. State,* wherein the court held:

> [T]he judge may determine whether mental-illness evidence may be presented, and if it is presented, may determine whether it raises the issue of a lesser-included offense.  Then, the jury may decide if the evidence lessens the defendant's culpability by finding him guilty of a lesser-included offense if presented at the guilt phase of trial or by assessing a lesser sentence at the punishment phase.

---

[2]   The Director hereby incorporates the Statement of Facts, Standard of Review, and Summary Judgment Standard set forth in his original answer.  DE 5 at 4-18.  Moreover, although Masterson raises four new claims at the end of his amended petition, the remainder of his amended petition is identical to his original petition.  Therefore, the Director is only addressing the new allegations.

160 S.W.3d 568, 575 (Tex. Crim. App. 2005).  He also relies on *Ruffin v. State*, in which the state court reaffirmed *Jackson* and held "that both lay and expert testimony of a mental disease or defect that directly rebuts the particular *mens rea* necessary for the charged offense is relevant and admissible unless excluded under a specific evidentiary rule."  270 S.W.3d 586, 588 (Tex. Crim. App. 2008).  Masterson's allegation, however, is time-barred, procedurally defaulted, and completely meritless.

### A.   Masterson's claim is barred under 28 U.S.C. § 2244(d).

Because Masterson failed to raise the instant claim in his original federal petition, this Court cannot consider the claim if it was not timely presented.  28 U.S.C. § 2244(d)(1)(A) provides that the one-year limitation period shall run from the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review.  In this case, the Court of Criminal Appeals affirmed Masterson's conviction on February 2, 2005.  *Masterson v. State*, 155 S.W.3d 167.  The United States Supreme Court denied Masterson's petition for writ of certiorari on February 21, 2006, *Masterson v. Texas*, 546 U.S. 1169, and his conviction became final at that time.  *See Caspari v. Bohlen*, 510 U.S. 383, 390 (1994).

However, because the statute is tolled during the pendency of state court petitions for habeas corpus relief, and because Masterson filed his state habeas application on February 26, 2004, before his conviction became final, the limitations period did not begin to run until August 20, 2008, the date the Court of Criminal Appeals denied Masterson's state habeas application. *Ex parte Masterson*, No. 59,481-01 at cover and Order; *see Fierro v. Cockrell*, 294 F.3d 674, 679 (5th Cir. 2002). Therefore, Masterson was required to present all claims to this Court by August 20, 2009.

Masterson filed his first federal habeas petition in this Court on August 17, 2009. DE 1. The filing of this petition does not toll the limitations period. *Duncan v. Walker*, 533 U.S. 167, 181-82 (2001) ("We hold that an application for federal habeas corpus review is not an 'application for State post-conviction or other collateral review' within the meaning of 28 U.S.C. § 2244(d)(2). Section 2244(d)(2) therefore did not toll the limitation period during the pendency of respondent's first federal habeas petition."). And even though this Court stayed the instant case for approximately eight months, during which Masterson returned to state court, the stay transpired well after the limitations period expired. DE 26 & 34. Thus, the instant claim, presented to this Court on April 8, 2013, is untimely by several years.

The limitations period may be subject to equitable tolling but only in "rare and exceptional circumstances." *Felder v. Johnson*, 204 F.3d 168, 170-

71 (5th Cir. 2000) (quoting *Davis v. Johnson*, 158 F.3d 806, 811 (5th Cir. 1998)).   Specifically, it "applies principally where the plaintiff is actively misled by the defendant about the cause of action or is prevented in some extraordinary way from asserting his rights."   *Felder*, 204 F.3d at 171 (quoting *Coleman v. Johnson*, 184 F.3d 398, 402 (5th Cir. 1999)).   Masterson does not address the time-bar issue in his amended petition; therefore, he cannot show that equitable tolling applies in his case.

Finally, Rule 15(c)(2) of the Federal Rules of Civil Procedure provides that "[a]n amendment of a pleading relates back to the date of the original pleading when ... the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading."   While Rule 15(c)(2) does apply to federal habeas corpus proceedings, the Supreme Court has rejected the argument that the "same conduct or transaction" refers to any claim that arises out of a habeas petitioner's trial, conviction, or sentence.   *Mayle v. Felix*, 545 U.S. 644, 656-69 (2005).   Instead, "relation back depends on the existence of a common 'core of operative facts' uniting the original and newly asserted claims."   *Id.* at 659.   Further, "relation back" does not occur "when the new claims depend upon events separate in 'both time and type' from the originally raised episodes."   *Id.* at 657 (quoting *United States v. Craycraft*, 167 F.3d 451, 457 (8th Cir. 1999)).

6

Following *Mayle*, the Fifth Circuit held that "[n]ew claims of ineffective assistance of counsel do not automatically relate back to prior ineffective assistance claims simply because they violate the same constitutional provision." *United States v. Gonzalez*, 592 F.3d 675, 680 (5th Cir. 2009). Other circuits have held the same. *United States v. Ciampi*, 419 F.3d 20, 24 (1st Cir. 2005) ("As the Supreme Court recently made crystal clear ... a petitioner does not satisfy the Rule 15 'relation back' standard merely by raising some type of ineffective assistance in the original petition, and then amending the petition to assert another ineffective assistance claim based upon an entirely distinct type of attorney misfeasance."); *United States v. Hernandez*, 436 F.3d 851, 858 (8th Cir. 2006) (amended claim referring to trial testimony and cross-examination of witnesses did not relate back to original claim regarding the admission of evidence; the claims do not satisfy the "time and type" test, nor do they arise out of the same set of operative facts).

Here, Masterson's claim does not relate back under *Mayle*. Masterson's previous ineffectiveness claim pertained to counsel's failure to present mitigating evidence at the punishment phase. His new claim asserts that counsel should have presented evidence of a brain impairment in order to negate *mens rea* at guilt innocence. Because Masterson's new allegation pertains to a completely separate phase of the trial and evidence that should

7

have been used for a very distinct purpose, the allegation differs in both time and type. *See Gonzalez*, 592 U.S. at 680 (holding that claim that attorney committed error for failing to file an appeal is a separate occurrence from conduct that occurs at sentencing phase or before trial); *Schneider v. McDaniel*, 674 F.3d 1144, 1152 (9th Cir. 2012) (holding that new claim asserting trial counsel's failure to investigate and prepare a defense did not relate back to claim that trial counsel failed to investigate codefendant's trial strategy, even though both claims pertained in part to codefendant), *cert. denied*, 133 S.Ct. 579 (2012); *see also id.* (new claim that counsel was ineffective for failing to develop voluntary intoxication defense to battery charge failed to relate back to original claim that counsel was ineffective for failing to have defendant evaluated by psychiatrist to determine his competency or sanity).

Because Masterson cannot show that his new claim relates back to his original petition under Rule 15(c)(2), this Court must dismiss the instant claim pursuant to 28 U.S.C. § 2244(d).

### B.  Masterson's claim is also procedurally defaulted.

Masterson first raised the instant claim in his successive state habeas application, which the Court of Criminal Appeals dismissed for abuse of the writ on December 19, 2012. *Ex parte Masterson*, No. 59,481-02 at cover and Order.  Federal review of a habeas claim is procedurally barred if the last

state court to consider the claim expressly and unambiguously based its denial of relief on a state procedural bar. *Harris v. Reed*, 489 U.S. 255, 263 (1989). The Fifth Circuit has held that after the Court of Criminal Appeals's decision in *Ex parte Barber*,[3] Texas' abuse-of-the-writ doctrine is an adequate and independent state ground. Accordingly, where a state prisoner has been cited for abuse of the writ following *Barber*, federal habeas corpus review of his claims in that writ application is barred. *Henderson v. Cockrell*, 333 F.3d 592, 606 (5th Cir. 2003) (recognizing that the Texas abuse-of-the-writ doctrine is firmly established and regularly followed); *see also Balentine v. Thaler*, 626 F.3d 842, 857 (5th Cir. 2010) (*Balentine II*); *Rocha v. Thaler*, 626 F.3d 815, 837-38 (5th Cir. 2010) (*Rocha II*).

The above claim, therefore, is procedurally defaulted unless Masterson can demonstrate cause for the default and prejudice that is attributable to the default or prove actual innocence. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). Masterson argues that he can demonstrate cause because, although his state habeas counsel addressed Masterson's alleged mental deficiencies, he did so in the context of punishment, not guilt-innocence. Amended Petition at 108-09. Thus, he suggests state habeas counsel was ineffective for failing to raise this claim on state habeas review.

---

[3]      879 S.W.2d 889, 892 n.1 (Tex. Crim. App. 1994).

In *Martinez v. Ryan*, the Supreme Court found for the first time an equitable exception to the unqualified statement previously asserted in *Coleman* that an error by an attorney in a postconviction proceeding does not qualify as cause to excuse a procedural default.  132 S.Ct. at 1315.  The Court's more recent decision in *Trevino v. Thaler* found that this limited equitable exception generally applies to Texas capital cases.  133 S.Ct. 1911, 1915 (2013).  The *Martinez* court limited its ruling only to procedural bars applied to ineffective-assistance-of-trial-counsel claims.  132 S.Ct. at 1319-21. Thus, it would apply in this case, but Masterson still must demonstrate that his state habeas counsel was actually ineffective pursuant to *Strickland v. Washington*[4] standards in order to establish cause for his procedural default. *Martinez*, 132 S.Ct. at 1318-20.

As addressed below, Masterson cannot meet his burden because his underlying claim has no merit.  State habeas counsel, therefore, could not have rendered ineffective assistance for choosing not to advance the allegation.  Consequently, Masterson has defaulted the instant claim.

## C.    Masterson's contention does not have any merit.

In order to establish a Sixth Amendment ineffective-assistance-of-counsel violation, Masterson must affirmatively prove that: (1) in light of all

---

[4]      466 U.S. 668 (1984).

the circumstances as they appeared at the time of the conduct, "counsel's representation fell below an objective standard of reasonableness," i.e., counsel's performance was deficient under "prevailing professional norms"; and (2) the resultant prejudice was "so serious as to deprive [him] of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687-88, 690. The failure to prove either element is fatal to the claim. *Id.* at 697.

In applying the "deficiency" prong, judicial scrutiny of counsel's performance "must be highly deferential," with every effort made to avoid "the distorting effect of hindsight" and to "evaluate the conduct from counsel's perspective at the time." *Id.* at 689-90; *Wiggins v. Smith*, 539 U.S. 510, 523 (2003). Accordingly, there is a "strong presumption" that the alleged deficiency "falls within the wide range of reasonable professional assistance," and Masterson must overcome the presumption that, under the circumstances, counsel's actions might be considered sound trial strategy. *Strickland*, 466 U.S. at 689.

Even if counsel's representation was deficient, Masterson must demonstrate prejudice by showing a reasonable probability that, but for counsel's deficiencies, the result of the proceeding would have been different. A "reasonable probability" is one sufficient to undermine confidence in the outcome. *Id.* at 694.

As stated, Masterson complains that counsel should have presented evidence of organic brain damage at guilt-innocence.  He argues that the evidence would have been admitted under *Jackson* and *Ruffin*, he could have negated the element of intent, and he would have been entitled to a lesser-included offense instruction.  However, for several reasons, Masterson cannot demonstrate that trial counsel performed deficiently.

First, *Jackson* was decided on April 13, 2005.  *Jackson v. State*, 160 S.W.3d 568.[5]  At the time Masterson was tried and convicted—April of 2002—Texas courts did not generally allow defendants to present evidence of a mental defect in order to negate *mens rea*.  *See Jackson v. State*, 115 S.W.3d 326, 328-29 (Tex. App.—Dallas, 2003) (the lower appellate court's opinion discussing the state of the law at the time and holding that Texas does not recognize a "diminished capacity" defense; consequently, trial counsel could not have been ineffective for not presenting evidence at guilt-innocence that defendant was bipolar and suffered from paranoid schizophrenia).  Although *Jackson* appeared to slightly expand the general rule, Masterson's trial counsel did not have the benefit of the decision at the time Masterson was tried.  Thus, trial counsel cannot be faulted for failing to present the above evidence.

---

[5]     *Ruffin* was decided three years after *Jackson*.

12

Second, the *Jackson* holding permits a defendant to present evidence of mental illness for the purpose of ultimately obtaining a lesser-included offense instruction.  Here, the jury received instructions on every possible lesser-included offense: murder, manslaughter, aggravated assault, and robbery.  2 CR 294-95.  Thus, had counsel presented evidence of organic brain dysfunction, Masterson would not have received any additional benefit in terms of jury instructions.

Third, as the director discussed in his original answer and motion for summary judgment, Masterson testified in his defense that Honeycutt's death was an accident and occurred during a sexual encounter that turned horribly wrong.  19 RR 114-78.  Specifically, he stated that Honeycutt asked him to put his arm around Honeycutt's neck to perform autoerotic asphyxiation.  *Id.* at 126-27.  In the process, Honeycutt went "limp" from the "sleeper hold" and died.  *Id.* at 128-29.  Trial counsel's entire summation was premised on the notion that there was reasonable doubt regarding the issue of intent; thus, at most, Masterson was guilty of a lesser offense.  20 RR 11-28.  Therefore, counsel made a "lack of intent" argument, but the jury rejected it.  Masterson has presented nothing to show that there is a reasonable probability this specific defense would have succeeded had counsel injected evidence of a brain impairment into the mix, particularly given Masterson's detailed trial testimony.  Indeed, the Supreme Court has called

into question the reliability of professional opinions regarding *mens rea*, as well as the evidence underlying those opinions. *Clark v. Arizona*, 548 U.S. 735, 776 (2006) ("Evidence of mental disease, then, can easily mislead; it is very easy to slide from evidence that an individual with a professionally recognized mental disease is very different, into doubting that he has the capacity to form *mens rea*, whereas that doubt may not be justified.").

Moreover, Masterson cannot demonstrate that counsel's actions, or lack thereof, resulted in prejudice. Masterson states that records indicate he *might* suffer from organic brain impairment, but that additional testing is needed. Amended Petition at 111. Masterson's self-reports aside, he has not provided any definitive evidence that he actually suffers from an impairment, nor has he explained how evidence of this nature would actually work in his favor.[6] For instance, had counsel presented such evidence at guilt-innocence, the jury may have concluded not that the impairment inhibited Masterson's ability to form *mens rea*, but that it contributed to Masterson's decision to

_____

[6]      Masterson has attached to his amended petition a report by Dr. Shawanda Williams-Anderson, who conducted a recent neuropsychological examination of Masterson. DE 57. Masterson does not appear to specifically mention this report in reference to his new claims, perhaps because the report involves an assessment of Masterson's current mental state. Nevertheless, the report is unhelpful because Dr. Williams-Anderson simply concludes that Masterson *may* be experiencing symptoms related to a brain dysfunction and consistent with a history of drug abuse. *Id.* She recommends additional testing, including a brain scan. *Id.* The report sheds no light on Masterson's mental functioning at the time he murdered Honeycutt.

commit murder.   In other words, evidence of brain dysfunction is double edged.  *Martinez v. Dretke*, 404 F.3d 878, 889 (5th Cir. 2005).

Further, although Masterson refers to Texas Youth Commission (TYC) records and reports by two experts, he has not shown that any expert was willing and available to testify at trial that he suffers from a brain impairment and that the impairment negated his ability to form intent.  Fifth Circuit precedent, therefore, forecloses his allegation.  *Day v. Quarterman*, 566 F.3d 527, 538 (5th Cir. 2009) ("[T]o prevail on an ineffective assistance claim based on counsel's failure to call a witness, the petitioner must name the witness, demonstrate that the witness was available to testify and would have done so, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense.") (citations omitted); *Evans v. Cockrell*, 285 F.3d 370, 377 (5th Cir. 2002) (complaints of uncalled witnesses are viewed unfavorably on federal habeas review because allegations of how a witness would have testified are largely speculative).

More importantly, the trial evidence demonstrated conclusively that Masterson intended to murder Honeycutt.  The Director addressed this evidence in detail in his original answer and motion for summary judgment, DE 5 at 4-7, 28-35, and need not repeat it here.  The Director simply notes again that Masterson confessed to the police that he intentionally murdered

15

Honeycutt and that he attempted to murder Steven Drew in the same manner several days after Honeycutt's death.  "[I]n most cases ... *mens rea* will be provable if it exists." *United States v. Anderson*, 885 F.2d 1248, 1255 (5th Cir. 1989); *see also United States v. Pohlot*, 827 F.2d 889, 903 (3d Cir. 1987) ("commentators have agreed ... that only in the most extraordinary circumstances could a defendant actually lack the capacity to form *mens rea* as it is normally understood in American law").  Given the totality of the circumstances, there is not a reasonable probability that the jury would have determined that Masterson lacked the capacity to form intent had counsel presented evidence of organic brain damage.  And because this claim lacks merit, state habeas counsel had no reason to present it.  Therefore, this Court should dismiss the claim as procedurally barred.

## II.   Likewise, Masterson's Allegation that Counsel Was Ineffective for Failing to Present Evidence that a Seizure Disorder Caused Masterson to Kill Honeycutt Is Time-Barred, Procedurally Defaulted, and Meritless.

Similar to the above claim, in his last supplemental claim (ground for relief fourteen), Masterson contends that counsel was ineffective for failing to investigate and present evidence that Masterson suffers from a seizure disorder.  Amended Petition at 115.  He states that seizure disorders can "include blackouts, involuntary muscle responses, and lack of control of large skeletal muscle systems." *Id.*  Then, he points to his history of drug abuse

and alleged head trauma.   *Id.*   He concludes: "Given the autoerotic and asphyxiation aspects of the crime which Mr. Masterson was charged with, a seizure during consensual asphyxiation in order to heighten orgasm would be a logical defense to the intent to kill."   *Id.*   In other words, Masterson appears to contend that trial counsel should have advanced the following theory: Masterson's traumatic history led to a seizure disorder; he experienced a seizure while grasping Honeycutt, and the seizure caused him to involuntarily strangle Honeycutt to death.

This claim must be dismissed for the reasons discussed above. Masterson did not present this allegation in his original federal petition; therefore it is time barred.   And because this ineffectiveness claim raises a new issue pertaining to guilt-innocence, rather than punishment, it does not relate back to Masterson's original petition.   Additionally, Masterson first raised this claim in his successive state habeas application dismissed for abuse of the writ.   Accordingly, it is procedurally defaulted.   Further, state habeas counsel's decision not to raise this claim does not excuse the procedural bar because Masterson's lack-of-intent allegation is flawed on multiple fronts, as shown above.

Moreover, an obvious error with Masterson's argument is that he confessed and testified at trial, never mentioning that he had a seizure or any kind of health issues when he killed Honeycutt.   If he seized and/or blacked

17

out, (1) he would have known and (2) surely that would have become the essence of his defense.  In other words, the primary witness on this matter would be Masterson himself.  Yet his claim requires the Court to assume the unreasonable: that he had a seizure, forgot or refused to tell anyone about it, including his attorneys, and came up with another story.  And even if that were the case, counsel could not deemed ineffective given Masterson's silence. *Miniel v. Cockrell*, 339 F.3d 331, 345 (5th Cir. 2003) ("We have held that counsel is not constitutionally ineffective for insufficiently investigating a defendant's mental or psychological condition when there is nothing to put counsel on notice that such a condition exists.").

At any rate, Masterson's claim obviously flies in the face of the trial testimony, including his own.  For example, Masterson testified that Honeycutt's death was the result of an unforeseen accident during sex.  While the two were on the bed, Honeycutt lay on his stomach, and Masterson laid on top of him with his arm around Honeycutt's neck to perform autoerotic asphyxiation.  19 RR 126.  After a few minutes, Masterson got up and saw that Honeycutt was dead.  *Id.* at 129-30. Masterson testified that he did not make the bed after he killed Honeycutt; he left the apartment in the condition the witnesses found it.  *Id.* at 151.  Yet the evidence established that Honeycutt's bed was not in disarray; it appeared to the witnesses that nothing had occurred on the bed, even though Honeycutt was partially laying

18

on it. *Id.* at 150-53; 18 RR 60, 81, 100. This evidence fails to support the theory that Masterson choked Honeycutt while he was in the throes of a violent, uncontrollable seizure.

Finally, Masterson's claim is wildly speculative. Even accepting for a moment that a death could possibly occur in the manner he suggests, Masterson has never offered any definitive evidence that he has a seizure disorder, let alone that he had a seizure at the exact moment he was with Honeycutt. His claim is based on supposition and a leap of reasoning unsupported by anything in the record. The Fifth Circuit "has made clear that conclusory allegations of ineffective assistance of counsel do not raise a constitutional issue in a federal habeas proceeding." *Collier v. Cockrell*, 300 F.3d 577, 587 (5th Cir. 2002) (citations omitted); *see also Ross v. Estelle*, 694 F.2d 1008, 1011-12 (5th Cir. 1983) ("Absent evidence in the record, a court cannot consider a habeas petitioner's bald assertions on a critical issue in his petition . . . to be of probative evidentiary value.").

In short, there is no merit to Masterson's claim, procedural issues notwithstanding. Therefore, this Court must reject the instant allegation.

## III. Masterson's Claim that Counsel Was Ineffective for Failing to Rebut the TYC Records Is Also Procedurally Defaulted and Lacking In Merit.

Next, Masterson alleges that trial counsel was ineffective for failing to investigate and prepare a rebuttal for the State's use of Masterson's TYC

juvenile records at the punishment phase of trial.  He claims that counsel was ineffective under *Rompilla v. Beard*, 545 U.S. 374 (2005).  Amended Petition at 113 (ground for relief twelve).

As the Director discussed in his prior answer, Masterson originally complained that counsel was ineffective for failing to investigate and present mitigating evidence at the punishment phase of trial, and he specifically argued that counsel did not introduce the TYC records.  DE 1 at 35.  However, Masterson failed to recognize that the State did in fact admit the records at the beginning of the punishment phase.  DE 5 at 41-42.  Because this error renders a significant portion of Masterson's original claim moot, *see id.* at 42-47, he has changed the allegation to reflect what actually occurred at trial.[7]

Masterson's claim is procedurally defaulted because Masterson returned to state court to exhaust it, and the Court of Criminal Appeals

---

[7]    Masterson's amended petition now includes a major discrepancy.  Aside from the four new claims, the instant amended petition is virtually identical to Masterson's original petition, indeed essentially verbatim.  Thus, ground for relief two, in which Masterson alleges that trial counsel was ineffective for failing to investigate and present mitigating evidence, still contains the erroneous assertion that Masterson's TYC records were never introduced at trial.  *See* Amended Petition at 34-36 and *compare* DE 1 at 34-36.  Masterson cannot have it both ways, and this Court should summarily reject claim two due to its fatal flaw.

dismissed Masterson's successive application as an abuse of the writ.[8] Masterson cannot demonstrate cause via ineffective assistance of state habeas counsel because his claim lacks merit for numerous reasons.

First, as discussed in the Director's original answer, the TYC records are clearly problematic under any scenario.  DE 5 at 42-46.  Although they contain evidence regarding Masterson's troubled family life and possible mental-health issues, they also highlight his frequent substance abuse, aggressiveness, hostility, and criminal history.  The State introduced the records and, on cross-examination, asked Masterson about certain details. However, defense counsel obviously did not want to emphasize them:

> The information contained within those [TYC] records was more harmful than helpful.  For example, the records included information regarding the defendant's extensive drug use, habit of fighting, expulsion from school, and shooting another individual.  The record also contained information concerning the defendant being shot during a drug deal.  Most importantly, the record reflected that the defendant told a Texas Youth Commission counselor that the defendant and his friends used to rob wealthy homosexuals in order to get money.  The defendant's sister, Ramona Weiss, testified about the family and background, so the Texas Youth Commission records were not necessary to disseminate that information to the jury.

---

[8]     Without conceding the issue, it is arguable that this particular claim is not time barred because it contains a common core of operative facts—alleged attorney error during the punishment phase pertaining to the TYC records—and, thus, relates back to Masterson's original claim under Rule 15(c)(2).  *Mayle*, 545 U.S. at 659.

SHCR 153-54; *see also* DE 5 at 42-46; SX 54; SHCR 77-82.  Any attempt to counter the damaging information in the records would have necessarily required counsel to address them in the first place.  But that strategy would have only served to further illustrate Masterson's years of appalling behavior.  Counsel's decision—the correct one—was to distance Masterson from those records as much as possible.

Moreover, the state court found that any mitigating value of the records would have been lost amidst the above harmful information.  SHCR 171.  And although the state court's determination occurred in the context of a claim that the records were never introduced, the decision was not incorrect.  In other words, whether the claim is that counsel failed to introduce the records or that counsel failed to rebut them, the fact remains that Masterson cannot demonstrate any prejudice because the bad outweighed the good.  *See Harrington v. Richter*, 131 S.Ct. 770, 788 (2011) (If there is any "reasonable argument that counsel satisfied *Strickland's* deferential standard," the state court's denial will be upheld.); *see also Cullen v. Pinholster*, 131 S.Ct. 1388, 1410 (2011) ("The new evidence relating to Pinholster's family—their more serious substance abuse, mental illness, and criminal problems—is also by no means clearly mitigating, as the jury might have concluded that Pinholster was simply beyond rehabilitation.").

Second, Masterson does not address how counsel should have refuted the harmful contents of the records.  He simply alleges that the State controlled the message, caught the defense flat-footed, and "was able to paint a picture of Mr. Masterson as a dangerous feral youth as opposed to the tragically traumatized child that he in fact was."  Amended Petition at 113. Masterson fails to explain what evidence could have been offered to counter the damaging information; he does not refer to any witnesses who had rebuttal testimony; and he has not presented any witnesses who were willing and able to testify.  More importantly, Masterson testified at punishment and, on cross-examination, acknowledged that some of the more sordid details of his past were true.  *See* 22 RR 86-88.  It would not have been possible for Masterson to rebut his own testimony.

Third, Masterson's claim that counsel allowed the State to control the message and failed to show that Masterson was a "tragically traumatized child" is false.  Counsel called Masterson's sister, Ramona Weiss, to testify at punishment.  Weiss stated that their father kidnapped their mother when Masterson was only three years old, and their sixteen-year-old sister took care of them for one month during that time.  22 RR 56.  Their father often came home after drinking and beat the children, including Masterson.  *Id.* at 58.  He showed no affection towards the children, and Masterson was placed in a foster home at one point.  *Id.* at 60-61.  Indeed, Weiss believed that their

father's violent behavior affected all of the children, including Masterson.  *Id.* at 62.  Weiss further said that the only time the children lived in a "normal house" was when they were picked up by a police officer after being abandoned and lived with him for a period of time.  *Id.* at 63.  Moreover, Masterson had eye problems as a youth and, as a result, was frequently teased.  *Id.* at 59, 64-65.  Therefore, counsel did present evidence of Masterson's troubled childhood and family dysfunction.  Counsel is not ineffective for failing to present evidence that is cumulative of testimony offered at trial.  *Skinner v. Quarterman*, 528 F.3d 336, 345 n.11 (5th Cir. 2008); *Emery v. Johnson*, 139 F.3d 191, 197 (5th Cir. 1997).

Fourth, and related, Masterson's claim that the State's use of the records somehow caught defense counsel flat footed is likewise false.  As shown, counsel was aware of the contents of the TYC records.  Moreover, on state habeas review, counsel asserted:

> The defense employed the services of Dennis Longmire, PhD., an expert on future dangerousness; however, Longmire did not testify at trial.  Longmire concluded that the defendant had a high probability of future violence compared to the general population of murderers.  The defendant did not want us to call Longmire as a witness.  *Longmire's testimony would have included information about the defendant's family, and the defendant stated that he did not want his family blamed for his actions or have them put on trial.*  Based on Longmire's opinion and at the defendant's specific request, we felt it was in the defendant's best interest that Longmire not testify.  The defense then reached an agreement with the State whereby the State agreed not to call their expert to testify regarding future

24

> dangerousness.  The defense believed that keeping the State's witness from testifying to the defendant's future dangerousness was in the defendant's best interest.

SHCR 154 (emphasis added).  It is apparent that counsel was prepared to offer testimony mirroring that in the TYC records, but both counsel and Masterson decided for strategic reasons not to take this course of action.

Fifth, although Masterson appears to contend that a proper rebuttal would have included evidence pertaining to his "traumatized" childhood—evidence of family difficulties exceeding the scope of Weiss's testimony—Masterson would not permit counsel to indict his family, as shown above.  In fact, when Masterson testified at punishment, he said:

> Everybody lives and dies by the choices that they make.  None of my family out there could control what I did.  I did what I did because I wanted to do it, not because they made me do it, or because I got my ass whooped.  I got my ass whooped because I deserved it a lot of times.  Sometimes I got whooped because I didn't deserve it but most of the time I - - I did something wrong, I got punished for it.  Just like now, there's a time when people just got to say, I did it, I accept responsibility for it.

22 RR 84-85.  Therefore, had counsel tried to offer additional evidence of childhood abuse and trauma, as reflected in the TYC records, Masterson would not have cooperated.  A criminal defendant cannot block his attorney's efforts and later claim that the resulting performance was constitutionally deficient.  *Schriro v. Landrigan*, 550 U.S. 465, 476-78 (2007); *Sonnier v. Quarterman*, 476 F.3d 349, 362 (5th Cir. 2007).

Sixth, and most importantly, Masterson cannot prove that any of counsel's omissions resulted in prejudice because the evidence of his future dangerousness was overwhelming, and the TYC records were hardly the linchpin of the State's case.  The State demonstrated the following: after murdering Honeycutt, Masterson attempted a very similar crime upon Steven Drew, who survived Masterson's assault; Masterson has prior convictions for auto theft, criminal mischief, and burglary; he had multiple disciplinary problems in jail, including assaults against other inmates and disobeying guards; he has a history of acting violently toward women, namely Cheryl Shook and Deedra Foster; and he is an extreme drug abuser.  At punishment, Masterson conceded that he would be dangerous to society if given the opportunity; that he would protect himself by any means possible; that he would commit acts of violence in prison; that there were no mitigating circumstances in his case; and that he should be given the death penalty if the jury follows the law.  21 RR 19-106; 22 RR 78-99; *see also* DE 5 at 7-14, 51-52.

Therefore, Masterson's future dangerousness was essentially a given. And it is implausible that any jury would not have imposed a death sentence regardless of counsel's omissions.  *See Strickland*, 466 U.S. at 698-99 (finding no prejudice due to State's overwhelming evidence on aggravating factors supporting death penalty); *Ladd v. Cockrell*, 311 F.3d 349, 360 (5th Cir. 2002)

(when the evidence of future dangerousness is overwhelming, "it is virtually impossible to establish prejudice"); *Santellan v. Cockrell*, 271 F.3d 190, 198 (2001) ("Considering [petitioner's] history in light of the horrific nature of this offense, a reasonable court could conclude that there was no substantial likelihood that the outcome of the punishment phase would have been altered by evidence that he suffered organic brain damage.").

Finally, Masterson claims that counsel was ineffective under *Rompilla v. Beard*. Amended Petition at 113. He is mistaken. In *Rompilla*, counsel failed to review a court file containing information that neither Rompilla nor his family mentioned. The file provided a range of mitigation leads, including alcohol abuse, schizophrenia, organic brain damage, fetal alcohol syndrome, and childhood abuse. 545 U.S. at 375. Because of counsel's deficiencies, the jury did not get to consider this evidence. Here, on the other hand, Masterson is not directly claiming that counsel failed to investigate and develop a case in mitigation, but that counsel failed to rebut evidence actually presented. This is not the issue the *Rompilla* Court considered. Moreover, whereas Rompilla demonstrated counsel's specific omissions, Masterson has not explained how counsel should have rebutted the TYC records. Indeed, Masterson's claim is conclusory at best. Last, Rompilla was able to demonstrate prejudice; he did not take the witness stand and admit

that he is a danger to society.  Given these distinctions, this Court must reject Masterson's claim.

## IV.  Masterson's Claim that Counsel Failed to Present Mitigating Evidence that He Suffers from Post-Traumatic Stress Disorder Caused by a Gunshot Wound Is Conclusory.  The State Court's Rejection of this Claim Was Not Unreasonable.

Last, Masterson alleges that counsel was ineffective for failing to develop and present mitigating evidence that Masterson had been shot as a youth, with the bullet being lodged near his spine.  This evidence was contained in his TYC records, and Masterson complains that counsel failed to show that he may have suffered from post-traumatic stress disorder (PTSD) as a result.  Amended Petition at 114 (ground for relief thirteen).

The Director believes that this claim is not time barred nor procedurally defaulted because it is the equivalent of "ground for relief two" in the instant amended petition and in Masterson's original petition. Amended Petition at 35-36; DE 1 at 35-36.  Therefore, it was adjudicated on the merits by the state court.  The Director, however, notes that for the second time in the same petition, Masterson has provided contradictory allegations: "ground for relief two" pertains to counsel's failure to present the TYC records; "ground for relief twelve" is that counsel failed to rebut the TYC records; and now "ground for relief thirteen" pertains to counsel's failure to

investigate and present evidence contained in the TYC records.  *See* DE 5 at
43; SX 54.

Nevertheless, the Director addressed this claim sufficiently in his
original answer, DE 5 at 37-53, but reiterates the following points.  First, the
TYC records *were* presented.  On cross-examination during the punishment
phase, Masterson acknowledged that he had once been shot during a drug
deal in which he also shot another participant.  22 RR 87.  Second, as
explained at length, counsel did not want to focus on the substance of the
TYC records because of the damaging information in them.  Counsel
specifically mentioned in his affidavit that he was bothered by the fact that
Masterson's gunshot wound occurred during a drug deal.  Third, counsel
investigated Masterson's youth and could have called Dr. Longmire to testify
about the records and other matters, including the gunshot.  However, both
counsel and Masterson decided as a matter of strategy that this course of
action would not be wise.  And Masterson did not permit counsel to call Dr.
Longmire because he did not want others blamed for his behavior.

Additionally, Masterson's claim is entirely speculative.  He has offered
no records, affidavits, or any additional evidence showing he suffers from
PTSD, let alone that the bullet wound could have caused PTSD.  He has not
provided any information demonstrating that his behavioral issues are due in
part to PTSD.  And Masterson has failed to offer the names of any witnesses

who were willing and able to testify about this matter.  As shown, the Fifth Circuit has repeatedly rejected conclusory allegations and those pertaining to uncalled witnesses.  *Collier*, 300 F.3d at 587; *Evans*, 285 F.3d at 377.[9]

Finally, Masterson cannot demonstrate any prejudice because the evidence of his future dangerousness was overwhelming, as discussed previously.  The state court's rejection of this claim, SHCR 166-67, 171-72, was not unreasonable, and this Court should deny relief.

## CONCLUSION

The Director respectfully requests that the Court grant the Director's motion for summary judgment and deny Masterson's amended petition for writ of habeas corpus with prejudice.

Respectfully submitted,

GREG ABBOTT
Attorney General of Texas

DANIEL T. HODGE
First Assistant Attorney General

DON CLEMMER
Deputy Attorney General
for Criminal Justice

EDWARD L. MARSHALL
Chief, Criminal Appeals Division

---

[9]       Although *Cullen v. Pinholster* precludes this Court from considering the report by Dr. Williams-Anderson in determining the reasonableness of the state court's decision, 131 S.Ct. at 1398, the Director notes that the report mentions nothing about the gunshot wound.  DE 57.

/s/ W. Erich Dryden
\*W. ERICH DRYDEN
Assistant Attorney General
State Bar No. 24008786
So. Dist. Admission No. 23717

\*Attorney-in-Charge

P.O. Box 12548, Capitol Station
Austin, Texas  78711-2548
(512) 936-1400
(512) 320-8132 (Fax)

ATTORNEYS FOR RESPONDENT

## CERTIFICATE OF SERVICE

I do hereby certify that a true and correct copy of the above and foregoing Respondent Stephens's Supplemental Answer and Motion for Summary Judgment has been served electronically to Patrick McCann, counsel for the Petitioner, on this the 2nd day of August, 2013.

/s/ W. Erich Dryden
W. ERICH DRYDEN
Assistant Attorney General

31