IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

RICHARD ALLEN MASTERSON §
§
     Petitioner, §
§
VS §      CIVIL ACTION NO. 4:09-cv-02731
§
WILLIAM STEPHENS, Director §
Texas Department of Criminal Justice §
Correctional Institutions Division §

**PETITIONER'S RESPONSE TO RESPONDENT STEPHENS'
ORIGINAL MOTION FOR SUMMARY JUDGMENT AND
SUPPLEMENTAL ANSWER AND MOTION FOR
SUMMARY JUDGMENT**

TO THE HONORABLE JUDGE HOYT:

COMES NOW, Richard Allen Masterson, Petitioner, by and through his attorney of record Patrick F. McCann with this Petitioner's Response to Respondent Stephens's Supplemental Answer and Motion for Summary Judgment and as grounds shows the following:

On October 12, 2010, the Respondent filed its Answer and Motion for Summary Judgment asserting, ultimately that "Masterson's petition should be denied because he fails to demonstrate that he is entitled to federal habeas relief." (Answer at 1).

Through this Reply, Mr. Masterson opposes the Respondent's request for summary judgment. *FED. R. CIV. P. 56(e)* provides that an opposition to summary judgment "may not rest upon the mere allegations or denial of the adverse party's pleading," but must be supported with evidence that

there is a genuine issue for trial.    Mr. Masterson's Petition for a Writ of Habeas Corpus (hereinafter "Petition") includes voluminous evidence in support of his claims. This Reply specifically replies to the Respondent's arguments, through reference to material presented in Mr. Masterson's Petition.

The Respondent will follow Respondent's numbering on the original and then address the supplemental at the end:

Respondent William Stephens (the Director) understands Masterson to raise the following grounds for relief:

1. Trial counsel were ineffective for failing to consult with and present testimony from a pathologist in order to rebut the testimony from the medical examiner.

2. Trial counsel were ineffective for failing to develop and present available mitigating evidence.

3. He was deprived of the right to trial by jury and due process because a juror slept through critical testimony given by the medical examiner.

4.   The trial court erred in refusing his request to submit a lesser-included-offense instruction to the jury on negligent homicide.

5. His Fifth and Sixth Amendment rights were violated by the admission of his confession, which was given in exchange for a

promise by the interrogating officer and after he had invoked his right to counsel.

6. The State failed to carry its burden of showing that he would be a continuing threat to society because it was apparent he would spend the rest of his life in such restraint that he could not be a danger to society.

7. The trial court erred in refusing his request to argue last at punishment on the issue of mitigation.

8. The Texas 10-12 rule is unconstitutional.

9. His Eighth Amendment rights were violated because the trial court refused to inform the jury that a hung jury would result in a life sentence.

*Review*

The Fifth Circuit has clarified the type of review necessary under AEDPA:

While AEDPA review is highly deferential, we note that it is not perfunctory. The Supreme Court has stressed that "[e]ven in the context of federal habeas, deference does not imply abandonment or abdication of judicial review. Deference does not by definition preclude relief." *Miller-El v. Cockrell* ( Miller-El I ), 537 U.S. 322, 340 (2003); *see also Panetti v. Quarterman*, 551 U.S. 930, 953 (2007) (AEDPA does not "prohibit a federal court from finding an application of a principle unreasonable when it involves a set of facts different from those of the case in which a principle is announced. The statute recognizes, to the contrary, that even a general standard may be applied in an unreasonable manner.") (internal quotation marks and citation omitted); *Taylor*, 529 U.S. at 377 (AEDPA "directs federal

courts to attend to every state-court judgment with utmost care, but it does not require them to defer to the opinion of every reasonable state-court judge on the content of federal law.").(emphasis supplied).

*Hayes v. Thaler,* 2010 WL 183395, 2 (5th Cir. 2010).  Mr. Masterson will reply to each  issue seriatim.

CLAIMS FOR RELIEF

**GROUND FOR RELIEF ONE**

**MR. MASTERSON WAS DEPRIVED OF HIS SIXTH AMENDMENT RIGHT TO THE EFFECTIVE ASSISTANCE OF COUNSEL AT THE GUILT- INNOCENCE  PHASE OF THE TRIAL WHEN TRIAL COUNSEL FAILED TO CONSULT WITH A PATHOLOGIST AND OFFER EXPERT MEDICAL TESTIMONY ON THE CAUSE OF HONEYCUTT'S DEATH.**

Mr. Masterson was convicted of strangling the complainant and thus, the testimony  of the state medical examiner, Dr. Schrode, was instrumental in  obtaining  the  conviction.  At trial, Dr. Schrode supplied the only expert medical testimony relative to Honeycutt's cause  of death.  His testimony undermined the credibility of Mr. Masterson's defense that the death  was accidental as a result of autoerotic asphyxiation. On state habeas review,  Mr. Masterson  sought the testimony of an expert pathologist, Dr. Paul Radelat, who could have completely  undermined the testimony of Dr. Schrode.

The Respondent asserts that "Dr. Shrode conceded the points that Dr. Walmsey  [defense cardiology expert] would have made," therefore, the

findings by the trial court are not unreasonable. (Answer at 20). Mr.

Masterson had no expert witness to give his side of the case. The statements in

Dr. Radelat's affidavit are powerful - infinitely more compelling than what the

Respondent asserts was an effective cross examination by defense counsel.

Dr. Radelat affirmed:

> Expressed in other terms, the choke/sleeper hold applied to the
> neck of Darin Shane Honeycutt at his request for erotic effect by
> Defendant Richard Masterson in reasonable medical probability
> could have produced the desired erotic effect, i.e. decreased
> consciousness, while almost simultaneously producing the
> decidedly undesirable effect of cardiac arrhythmia. This transition
> to cardiac arrhythmia, producing increasing semi-consciousness
> and eventual unconsciousness may not have been recognizable to
> Defendant Richard Masterson who may not then have reduced the
> hold quickly enough to avert irreversible consequences. This
> sequence of events would be consistent with the facts related by
> Richard Masterson in his trial testimony.

Petition at Appendix D. The Respondent asserts that Mr. Masterson's claim

lacks merit stating:

> It appears to be Masterson's contention that only a pathologist
> could have successfully rebutted Dr. Shrode's testimony. This is a
> wholly speculative and conclusory allegation because Masterson
> provides nothing to show that a doctor with a different specialty
> could have provided better information.

(Answer at 23). What Mr. Masterson claims is that an expert - like Mr. Radelat

- could have provided a proper framework for the jury to judge the entire case.

Mr. Masterson was denied the effective assistance of counsel when his

atotrneys failed to present any evidence rebutting the State's expert. In a

recent Fifth Circuit case, the Court explained:

> In support of its decision that counsel rendered deficient performance by failing to obtain an expert, the district court relied largely on the Sixth Circuit's decision *in Richey v. Bradshaw*, 498 F.3d 344 (6th Cir.2007). The court there held that counsel for a defendant convicted of arson rendered ineffective assistance because he did not conduct a reasonable investigation or adequately consult experts to test the State's scientific evidence that a fire was caused by the use of accelerants. We find Richey and other similar cases cited in the district court's opinion inapposite because they concerned expert opinions from government witnesses that inculpate the defendant. But here the *State's previously presented expert provided testimony that tended to exonerate Woodfox.* Counsel's duty is to reasonably investigate or make a reasonable decision that no further investigation is necessary. (Emphasis supplied).

*Woodfox v. Cain,* 609 F.3d 774, 811 (5th Cir. 2010). The State's expert did not present evidence to exonerate Mr. Masterson and the defense should have sought an expert to explain exactly how the death could have been accidental. The *Richey* case the Fifth Circuit cites, involved a case where the defense actually got an expert - but not one properly utilized:

> The scientific evidence of arson was thus fundamental to the State's case. Yet Richey's counsel did next to nothing to determine if the State's arson conclusion was impervious to attack. True, Richey's counsel retained DuBois to review the State's arson evidence, so this case does not exemplify that most egregious type, wherein lawyers altogether fail to hire an expert. But the mere hiring of an expert is meaningless if counsel does not consult with that expert to make an informed decision about whether a particular defense is viable. See Strickland, 466 U.S. at 691, 104 S.Ct. 2052 (stating that defense counsel "has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary"). At bottom, the record shows that Richey's counsel did not conduct the

investigation that a reasonably competent lawyer would have conducted into an available defense-that the fire was not caused by arson-before deciding not to mount that defense.

"A lawyer who fails adequately to investigate, and to introduce into evidence, information that demonstrates his client's factual innocence, or that raises sufficient doubts as to that question to undermine confidence in the verdict, renders deficient performance." *Reynoso v. Giurbino*, 462 F.3d 1099, 1112 (9th Cir.2006) *(quoting Lord v. Wood*, 184 F.3d 1083, 1093 (9th Cir.1999)). Here, Richey's counsel appeared unconcerned about the State's scientific evidence from the very beginning.

*Richey v. Bradshaw,* 498 F.3d 344, 362 (6th Cir. 2007). The findings by the trial court are unreasonable in light of the affidavit Mr. Masterson offered which was not conclusory - but illuminating as to the type of defense he could have offered.

**GROUND FOR RELIEF TWO**

**MR. MASTERSON WAS DEPRIVED OF HIS SIXTH AMENDMENT RIGHT TO THE EFFECTIVE ASSISTANCE OF COUNSEL AT THE PUNISHMENT PHASE OF THE TRIAL WHEN TRIAL COUNSEL FAILED TO ADEQUATELY DEVELOP AND PRESENT MITIGATING EVIDENCE.**

*Respondent concedes error in findings by trial court - A review by this Court*

*necessitates a remand to state court for a review of the findings.*

As the Respondent explained in his motion for summary judgment - the TYC records  which were presumed not entered into evidence, were *in fact* entered into evidence during  the State's cross examination of Mr. Masterson:

> The Director concedes that the finding that trial counsel chose not to admit the  TYC records as a matter of trial strategy is erroneous, but not for the reasons Masterson asserts. Instead, as discussed below, those records were actually admitted at trial at the State's request; thus, counsel could not have been ineffective for failing to present them to the jury. The additional findings are proper, and based on the totality of the record, the state court's decision was  not objectively unreasonable.

(Answer at 40).

This rationale fails because the trial attorneys' affidavits stated affirmatively that the  TYC records were *not* admitted because of strategy. According to the trial attorneys those  records would have hurt Mr. Masterson. The trial court accepted that as a basis for finding  that Mr. Masterson was effectively represented. Now, those findings are seriously  questioned because the trial attorneys affirmed that it was strategy *not* to admit the records.  Therefore, because they were admitted, it was ineffective assistance of counsel to admit  them. The trial attorneys cannot have it both ways. The findings by the trial court are  entirely erroneous when the attorneys affirmed

the records would hurt Mr. Masterson, yet they were admitted to harm but never to help.

On state habeas review, Mr. Masterson had the assistance of an expert who provided an affidavit with compelling mitigating evidence about the type of abuse Mr. Masterson had grown up with. The Respondent assertion that the TYC records which were admitted with one or two exceptions mirrored the affidavit of Dr. Brown.     (Answer at 42).    For this proposition, the Respondent urges, "As stated above, counsel is not ineffective for failing to present duplicative testimony. *Emery*, 139 F.3d at 197." (Answer at 47). But the reasoning behind *Emery* is more complicated:

> In any event, Emery has not demonstrated prejudice. At trial, both Smith and Michaeloff testified that Emery had confessed to them. Although Emery originally told Smith that he had stabbed a man, he later identified Muhlinghaus in a picture. Michaeloff recounted a confession that was far more detailed and accurate than that reported by Deborah.
> In short, Deborah's testimony about the confession was duplicative of testimony given by Smith and Michaeloff. Emery cannot demonstrate that a third source of the same confession would have sufficed to change the result of his trial.

*Emery v. Johnson* , 139 F.3d 191, 197 (5th Cir. 1997). In *Emery*, the jury had heard the evidence twice before. Even the Respondent cannot assert that the use of the records by the state for the cross-examination of Mr. Masterson was in any way a mitigation case. To deny Mr. Masterson the right to present the full details of his life - to give the jury a full picture of the man

they were going to decide would live or die - is not the supported by *Emery*.

While the TYC records may have been admitted at trial - they certainly were NOT utilized in mitigation of punishment. There was no discussion of the depth and breadth of the abuses suffered by Mr. Masterson. The defense had no mitigation expert - no expert testimony to place the entire life of Mr. Masterson into context. Dr. Brown's testimony could have placed the life of Ms. Masterson into a proper context. The United States Supreme Court has confirmed that when considering whether defense counsel provided effective assistance of counsel in not presenting available, relevant evidence in mitigation of punishment, "not all of the additional evidence need be favorable to the petitioner." *Williams v. Taylor*, 529 U.S. 362, 396, 120 S.Ct. 1495, 1513, 146 L. Ed. 2d 389 (2000); *Rompilla v. Beard,* 545 US. 304 (2002). And here none of the evidence from the TYC records was actually presented to the jury. There was no mitigation expert who could explain those records to the jury or even defense counsel.

"...[I]t is undisputed that [petitioner]... had a right--indeed, a constitutionally protected right--to provide the jury with the mitigating evidence that his trial counsel either failed to discover or failed to offer." *Williams*, 529 U.S. at 393, 120 S.Ct. at 1513.

Defense counsel *offered* nothing like the TYC records or Dr. Brown's affidavit. The findings by the trial court were unreasonable and erroneous because there was, in effect, no mitigation case for Mr. Masterson.

### GROUND FOR RELIEF HREE

**MR. MASTERSON WAS DENIED HIS RIGHT TO TRIAL BY JURY AND TO DUE PROCESS OF LAW GUARANTEED BY THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION WHEN A JUROR SLEPT THROUGH CRITICAL TESTIMONY GIVEN BY THE MEDICAL EXAMINER.**

Mr. Masterson put the trial court on notice that a juror had been sleeping through the medical examiner's testimony and asked the court the replace that juror with an alternate. The trial court rejected what was an inherently reasonable and constitutional request. The Respondent asserts that the issue is procedurally defaulted, alleging:

> Masterson does not point to any cause for his failure to timely object. He simply claims that under the contemporaneous objection rule, the court was not required to make an immediate decision, and the matter in question "was made known to the court in time for the court to at least have conducted an inquiry or appointed the alternate juror." Petition at 63 (emphasis in original). To the contrary, the Court of Criminal appeals has held that "[a] motion for mistrial
> is timely only if it is made as soon as the grounds for it become apparent." *Griggs v. State*, 213 S.W.3d 923, 927 (Tex. Crim. App. 2007) (emphasis added).

(Answer at 57). At the time that Mr. Masterson objected there was more than

sufficient time  to place the alternate on the panel, or at the very least, have an

inquiry into whether the juror  was sleeping. To ignore the objection resulted

in  a  constitutional  deprivation  for  Mr.  Masterson. Replacing  the  suspect

juror  with  the  alternate  juror  would  not  have  delayed  the   trial. The  sleeping

juror  was  called  to  the  trial  court's  attention  in  a  timely  way,  in  time  for   the

trial  court  to  act  on  the  defense  objection. The  trial  court  erred  and

deprived  Mr.  Masterson of a fair trial by failing to do so.

### **<u>GROUND FOR RELIEF FOUR</u>**

### **MR. MASTERSON'S WAS DENIED DUE PROCESS WHEN THE TRIAL COURT REFUSED TO CHARGE THE JURY ON THE INCLUDED OFFENSE OF EGLIGENT HOMICIDE, WHICH WAS RAISED BY THE EVIDENCE, INCLUDING MR. MASTERSON'S TESTIMONY.**

Mr. Masterson's testimony raised the issue of whether he was entitled

to  the  lesser   included  offense  instruction  of  criminally  negligent  homicide.

The  Respondent  asserts  that  there  was  no  error  in  Mr.  Masterson's  jury's  not

receiving  the  proper  instruction. (Answer  at  64). Under  Texas  law,  regardless

of  its  strength  or  weakness,  if  any  evidence  raises  the  issue  that  the  defendant

was  guilty  only  of  the  lesser  included  offense,  then  the  charge  must  be  given.

*Saunders  v.  State*,  840  S.W.2d  390,  391  (Tex.Crim.App.1992). The

Respondent   further  argues  that  "[c]onsequently,  the  trial  court's  decision  to

deny  Masterson  an  instruction   regarding  negligent  homicide  did  not  deprive

him  of  due  process."  (Answer at 67).

The Court of Criminal Appeals understood there was error, but determined it harmless. *Masterson*, 155 S.W.3d at 171. But the denial was not harmless and was violative of state and federal precedent. The Supreme Court in *Beck v. Alabama* made clear what is constitutionally required:

> Moreover, it is no answer to petitioner's demand for a jury instruction on a lesser offense to argue that a defendant may be better off without such an instruction. True, if the prosecution has not established beyond a reasonable doubt every element of the offense charged, and if no lesser offense instruction is offered, the jury must, as a theoretical matter, return a verdict of acquittal. But a defendant is entitled to a lesser offense instruction – in this context or any other – precisely because he should not be exposed to the substantial risk that the jury's practice will diverge from theory. When one of the elements of the offense charged remains in doubt, but the defendant is plainly guilty of *some* offense, the jury is likely to resolve its doubts in favor of conviction.

*Beck v. Alabama*, 447 U.S. 625, 635, 100 S.Ct. 2382, 2388 (1980)(citation omitted). It is smoke and mirrors to determine that Mr. Masterson was not harmed by the jury's not having *every charge before them that fit the evidence*. The trial court and the findings by the Court of Criminal Appeals are unreasonable in light of the facts and the law.

## GROUND FOR RELIEF FIVE

**MR. MASTERSON'S FIFTH AMENDMENT RIGHT WAS VIOLATED BY THE ADMISSION OF HIS CONFESSION WHICH WAS GIVEN IN EXCHANGE FOR A PROMISE BY POLICE.**

## GROUND FOR RELIEF SIX

**MR. MASTERSON'S FIFTH AND SIXTH AMENDMENT RIGHTS WERE VIOLATED BY THE ADMISSION OF HIS CONFESSION WHICH WAS GIVEN AFTER POLICE CONTINUED QUESTIONING HIM AFTER HE HAD INVOKED HIS RIGHT TO COUNSEL.**

*Mr. Masterson's Claims*

Mr. Masterson argued in his petition that he confessed to a Houston police officer concerning this Texas capital murder because the officer promised to help Mr. Masterson's nephew escape prosecution for the illegal drugs found in the car that Mr. Masterson had stolen, but which the nephew had been driving. The officer acknowledged that he told Mr. Masterson he would do what he could for the nephew, pass on to authorities what Mr. Masterson had said, but he also testified at the suppression hearing that this was not a promise to do anything specific, and it wasn't given to induce Mr. Masterson's confession. Mr. Masterson's second claim regarding his confession is that he invoked his right to counsel before a magistrate in Florida, and that invocation was not honored before he was interrogated by the Houston police officer.

*The Prosecution's Responses*

The Respondent's primary response to the claim that the confession was induced by a promise is that the two were not related. In the Respondent's view Detective Null agreed to do what he could to help Mr. Masterson's nephew, but he didn't promise that in exchange for Mr. Masterson's confession, and it wasn't a specific promise intended to induce a confession.

In regard to the claim of invoking the right to counsel, the Respondent argues that (1) Mr. Masterson's right to counsel hadn't attached yet, because he wasn't being arraigned for this Texas capital murder offense, and (2) the trial judge was free to disbelieve Mr. Masterson's claim and obviously did so.

*Petitioner's Replies to the Prosecution's Positions*

1. <u>Confession Induced by Promise (dangling the carrot)</u>

Petitioner stated in his original petition that this issue is largely one of first impression,  because Petitioner and Respondent do not differ much on the facts.  Detective Null testified,  "I told him [Mr. Masterson] that if the dope was his and he wanted to admit the dope was his  that I would let the people know that he was admitting that the dope, it was his dope." He added, though, that he didn't promise or threaten Mr. Masterson with anything in exchange  for his giving a statement. (RR63-64, 92; Respondent's Reply at p. 73) Mr. Master testified  that he took the officer's statement to mean that he, Officer Null, "would help me out" if he  confessed. (RR2 149) "I give the statement because Mr. Null told me that he would drop  them charges on my nephew." (RR2 160)

Officer Null acknowledged in turn that he didn't know how Mr. Masterson took his  statements, or what his motive was for confessing.  When he agreed to do what he could for  Mr. Masterson's nephew, "I didn't know how he [Mr. Masterson] would interpret it. He  asked me to do it and I told him that I would." (RR2 110)

So both sides  agreed on what had been said. The question is, what

was its effect? The officer's claim was that he wasn't trying to induce the defendant to confess. They were just chatting, and after the officer offered to do something for the defendant, the defendant changed his mind and confessed to capital murder. It was just one of those lucky breaks that happen so often for police officers during interrogations.

The defendant, though, says he took the officer's statement as a promise to help his, Mr. Masterson's, nephew in exchange for his confession. So he confessed. The statement and the fact that Mr. Masterson gave a confession after the statement are not in question. The issue is whether one was a product of the other. The underlying issue is this: Was a confession involuntary if it was given in exchange for a promise, even if the officer didn't intend that promise to induce the confession?[1]

Everyone is familiar with the cartoon of the farmer riding on the back of a mule holding a fishing pole with a string and carrot on the end of it in order to guide the mule where the rider wishes it to go. That is exactly what happened here. The test for whether a confession is voluntary is whether it is the product "of an essentially free and unconstrained choice by its maker." *Schneckloth v. Bustamante*, 412 U.S. 218, 225, 93 S.Ct. 2041, 36 L.Ed.2d

854 (1973). A defendant has been deprived of due process of law if his conviction is founded upon an involuntary confession, even if the confession is true. *Rogers v. Richmond*, 365 U.S. 534, 543-44, 81 S.Ct. 735, 739, 5 L.Ed.2d 760 (1961).

The totality of the circumstances determine whether a confession is voluntary. *Arizona v. Fulminante*, 499 U.S. 279, 285, 111 S.Ct. 1246, 1251, 113 L.Ed.2d 302 (1991). The State has the burden to prove the voluntariness of the confession. *Gentry v. State*, 770 S.W.2d 780, 789 (Tex.Crim.App. 1988), *cert. denied,* 490 U.S. 1102, 109 S.Ct. 2458, 104 L.Ed.2d 1013 (1989). Most importantly, whenever an accused's testimony of alleged coercion is undisputed, the resulting confession is inadmissible as a matter of law. *Sinegal v. State*, 582 S.W.2d 135, 137 (Tex.Crim.App. 1979).

These principles answer the question posed above. The officer's intent doesn't answer the issue. Whether a defendant's will was overborne by the promise made is obviously from the point of view of the defendant. It is a subjective question. One defendant might not be induced to confess even if promised that his whole family would be released from prison as a result. Another, weak-willed and thirsty, might give it up for a Coke.

The totality of the circumstances must be considered. When the questioning began, as Officer Null acknowledged, Mr. Masterson would not admit to knowing anything about the murder in Houston. When it was over, he had confessed to it. That was the officer's purpose in the session. In the course of it, he made a statement that Mr. Masterson took as a promise to help his young nephew if Mr. Masterson would confess, so he did so. The officer testified he didn't intend his statement to have that effect, but also admitted he didn't know why Mr. Masterson did confess. Neither he nor any other witness presented evidence that Mr. Masterson's confession was <u>not</u> the result of this promise. That does not carry the prosecution's burden of proving the statement's voluntariness.

Officer Null's failure to refute Mr. Masterson's claim also means the defendant's testimony that he was coerced into confessing by the promise made is undisputed. Therefore the confession was inadmissible as a matter of law.

The trial court violated well-established federal standards of law by failing to suppress the confession. Mr. Masterson's right to due process of law was violated by that error. He was harmed because there was virtually

19

no other evidence of his guilt than the confession. One cannot dangle the bait and then claim one did not intend to catch something.

2. Invocation of Right to Counsel

This ground centers on Mr. Masterson's undisputed claim that when he was taken before a magistrate in Florida in a proceeding concerning his extradition to Texas he invoked his right to counsel. Florida officials did nothing about this request. Therefore Mr. Masterson should have been provided counsel before he was later questioned by Officer Null.

Respondent argues among other claims that Mr. Masterson's right to counsel had not attached at the time of the hearing in Florida. *Respondent's Response* at 81-82. That right, according to the Respondent, does not attach until the first formal charging proceeding, in which the defendant is informed of the "formal accusation against him and restrictions are imposed on his liberty. *Rothergery v. Gillespie County, Texas*, 128 S.Ct. 2578, 2581 (2008)." Both sides argue, also, that the right to counsel is offense specific. *Petition* at p. 89; *Respondent's Response* at 82. The parties draw different inferences from this law. Respondent argues that Mr. Masterson's hearing in Florida was not a formal charging of the Texas

offense, so his right to an attorney did not attach to that offense.  However, again, Mr. Masterson's testimony on this hearing was the only evidence, and he testified that the hearing  concerned his extradition to Texas.  So that hearing did concern the instant offense.

But whether he has been formally charged or not, a defendant's right to counsel certainly attaches at the time he is questioned about an offense. *Edwards v. Arizona*, 451 U.S. 477, 484-85, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981). When Mr. Masterson was placed in an interrogation room with Officer Null, he had already invoked his right to counsel. The two should never have been brought together under these circumstances unless  Mr. Masterson himself re-initiated the contact. *Edwards, supra.* There is no evidence he did any  such thing. The two sets of law enforcement authorities simply combined to ignore Mr. Masterson's request for counsel, and interrogate him to the point of confessing in spite of that invocation. Otherwise Mr. Masterson relies on the arguments and authorities in his petition.

## GROUND FOR RELIEF SEVEN

**THE STATE FAILED TO CARRY ITS BURDEN OF PROVINGTHAT MR. MASTERSON WOULD BE A CONTINUING THREAT TO SOCIETY WHEN BASED ON HIS OWN TESTIMONY IT WAS APPARENT THAT HE WOULD SPEND HIS TIME IN CONFINEMENT UNDER SUCH RESTRAINT THAT HE COULD NOT BE A DANGER TO SOCIETY.**

*Petitioner's Claim*

At the punishment phase of Mr. Masterson's trial, the prosecution called numerous witnesses to testify to his dangerousness whether confined or not. He himself testified at punishment that he would protect himself in prison "by any means necessary." He then answered one of the two special issues for the prosecution: "That makes me a future danger, yes, I am." He further testified that there were no mitigating circumstances in his life from his perspective. (RR22 84-85)

Petitioner argued that this testimony proved not that Mr. Masterson would be in danger of committing criminal acts of violence in the future, but that because of his recordand his nature he would be confined in such restricted circumstances in prison that he would <u>not</u> be a danger to anyone else if sentenced to life in prison. Legally, his claim is that the evidence did not meet the standard of *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781,

61 L.Ed.2d 560 (1979). The prosecution failed to prove that he would be a future danger to society, even if that society was defined as the society inside prison.

*Respondent's Response*

The government responds that Mr. Masterson's argument is based on the mere presumption that he would be placed in administrative segregation. Second, Respondent argues that even if Mr. Masterson in fact never will harm anyone in prison, there will still be a "probability" that he will commit future acts of violence – what the State had to prove at trial. Finally, Respondent argues that the future dangerousness special issue "focus[es] on evidence germane to the defendant himself, not actions by parole or prison authorities." *Respondent's Reply* at 89.

Both parties also cited the Court of Criminal Appeals' "analysis" of this claim on direct appeal: "If accepted, it would stand the capital punishment scheme on its head, giving relief to the most dangerous offenders. We will not speculate, for legal sufficiency purposes, about the effectiveness of the prison and parole authorities' methods of protecting society from those who are intent on committing future criminal acts of

violence. Point of error five  is overruled." 155 S.W.3d at 174.

*Mr. Masterson's Response*

> The Court of Criminal Appeals addressed this claim simply by recoiling from it.

Respondent  similarly  argues  that  this  claim  reverses  the  capital punishment scheme, making  the most dangerous offenders least susceptible to  being  given  a  death  sentence.  Neither  of  these  arguments  actually addresses  the claim.  And in fact in prison the most dangerous  offenders are  treated  as  such  and  therefore  have  no  opportunity  to  create  a danger  to anyone  else.

Respondent's claim that Mr. Masterson failed to prove that he will not be  a  danger  to  anyone  also  presumes  that  the  defendant  had  the  burden  of proof  on  this  issue,  which  was  not  the  case.  Mr.  Masterson  presented evidence from which the jury could infer that he would  be so isolated as to be  no  danger  to  anyone.  The  State  failed  to  refute  this  claim  with  any evidence  that  he  would  have  an  opportunity  to  commit  criminal  acts  of violence.  When  the  only  evidence  on  a  claim  is  defensive  evidence,  the evidence is insufficient under the well- established federal standard.

Neither the prosecution nor the Court of Criminal Appeals made any attempt to perform the sufficiency of the evidence analysis required by this claim. Therefore Mr. Masterson was denied his right to due process of law in state court. This Court should grant relief and vacate the death sentence upheld without that required review.

## GROUND FOR RELIEF EIGHT

**MR. MASTERSON WAS DENIED HIS SIXTH AMENDMENT RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL WHEN THE TRIAL COURT REFUSED THE DEFENSE REQUEST TO ARGUE LAST AT PUNISHMENT ON THE ISSUE OF MITIGATION.**

*Mr. Masterson's Claim*

Mr. Masterson argued in this ground that he was denied his constitutional right to the effective assistance of counsel when the trial court denied his request to argue last at the punishment phase of trial. Since neither side had the burden of proof on the mitigation special issue, there was no reason to follow the traditional approach of having the State argue last, which is based on the State's usually having the burden of proof and persuasion. The Court of Criminal Appeals overruled this claim merely by referring to a state statute, Article of the Code of Criminal Procedure, which governs the order of argument in criminal case. This did not address

Mr. Masterson's claim.

*Respondent's Reply*

First Respondent argues that though Mr. Masterson specifically made an effective assistance of counsel claim in both the trial court and this Court, "his claim is actually a challenge to the trial court's ruling and state law, which designates the order of argument." *Respondent's Reply* at 91. Respondent then argues that the Fifth Circuit has rejected the claim, partially incorporated in Mr. Masterson's argument, that the mitigation special issue shifts the burden of proof to the defendant. *Respondent's Reply* at 92.

But primarily Respondent argues that Mr. Masterson failed to show harm in being denied the right to argue last. *Respondent's Reply* at 92-93.

*Mr. Masterson's Response*

Arguments would be so much easier if one party were allowed to characterize the other's argument as something other than what it is. But in fact Mr. Masterson is claiming a violation of his constitutional right to the effective assistance of counsel, not a violation of some state statute. He need hardly mention that *Strickland v. Washington, supra*, along with countless

other Supreme Court decisions, holds that a defendant facing a death sentence is entitled to the effective assistance of counsel. That right is undermined when the State is perpetually allowed to argue last, therefore countermanding and even mocking any defensive arguments against the imposition of a death sentence. The State does not have the right to the effective assistance of counsel. Nor does it have a constitutional right always to argue last. In this one instance, death penalty prosecutions, the parties are on at least an equal footing at the punishment phase, where neither has the burden of proof on the mitigation special issue. It is obvious to any participant in the death penalty system that it is the defendant who has the burden of persuasion in that punishment phase, where he must convince the jury that he is not a future danger to society and that there is something in his life that mitigates against the imposition of a death sentence, after the same jury has already found him guilty of the worst crime in our law. In this analysis the defendant's right to effective assistance of counsel means his counsel getting to have the last word with the jury, to have the last opportunity to present its evidence in a light that will turn that jury from their nearly inevitable decision.

## GROUND FOR RELIEF NINE

## THE "12-10" RULE IS UNCONSTITUTIONAL AS APPLIED IN THIS CASE BECAUSE THE JURY FINDINGS IT REQUIRES AND THE SCHEME IN WHICH IT IS APPLIED VIOLATE THE EIGHT AMENDMENT TO THE UNITED STATES CONSTITUTION.

*The Posture of the Parties*

Mr. Masterson acknowledges in making this argument that precedent is against him. Respondent replied that "the law is not on his [Mr. Masterson's] side." *Respondent's Reply* at 95. However, both parties have addressed the issue at length, and Mr. Masterson requests that this Court do so as well. His argument was given no hearing in the Court of Criminal Appeals, which simply held that it had overruled this claim before.

But in his petition Mr. Masterson points out why even well-established precedent must be re-examined regularly, citing any number of examples of former precedents subsequently overruled by the Supreme Court and other courts, sometimes in light of evolving standards, sometimes simply because the precedents are wrong.

This one is also wrong, and Mr. Masterson asks this Court to address his arguments, unlike the state court. The 10-12 rule is an

unreasonable interpretation of Supreme Court precedent under 28 U.S.C. §2254(d)(2).

## GROUND FOR RELIEF TEN

**MR. MASTERSON'S CONSTITUTIONAL RIGHT TO BE FREE OF CRUEL AND UNUSUAL PUNISHMENT WAS VIOLATED IN THIS CASE BY THE TRIAL COURT'S REFUSAL TO INFORM THE JURY THAT A HUNG JURY WOULD RESULT IN A LIFE SENTENCE.**

As in the previous ground for relief, the Court of Criminal Appeals acknowledged this claim without actually addressing it. 155 S.W.3d at 175-76. Also as in the previous ground, Mr. Masterson acknowledged that current precedents do not support this claim, and Respondent agreed. *Respondent's Reply* at 100-101.

Respondent argues, "The instant claim is the same allegation Masterson raised above

– that jurors are unaware of the consequences of their failure to agree on the special issues." *Respondent's Reply* at 100. Which begs the question, why do we have an interest in keeping jurors ignorant? Jurists and lawyers claim to believe in the wisdom of jurors, yet we perpetuate a system that deliberates keeps them uninformed of their precise function in the death penalty scheme.

As in the previous claim, Mr. Masterson challenges current case law, and asks that it be held to be wrong. **However, failing that, it is by and large an unreasonable interpretation of Supreme Court precedent on such analogous precedents as** *Caldwell v. Mississippi*, **472 U.S. 320 (1985).** Precedents should be re-examined periodically to test their validity; whether their reasoning remains sound or whether our evolving standards have removed their underpinnings. Again, Mr. Masterson, under sentence of death, asks this Court to re-examine this precedent, and to find it unsound.

### GROUNDS FOR RELIEF ELEVEN THROUGH FOURTEEN AMENDED PETITION, RESPONSE TO DIRECTOR'S SUPPLEMENTAL RESPONSE AND MOTION

### A. Masterson's Ineffective Assistance Claim for Failing to Present Evidence is Not Time Barred

At page 6 of the Director's Supplemental Answer and Motion for Summary Judgment the Director posits: "Masterson did not address the time-bar issue in his amended petition; therefore, he cannot show that equitable tolling applies to his case." By the Director's own reasoning, he failed to object to the stay and remand therefore cannot do so now as the claim has been waived. Supreme Court precedent establishes that a court may consider a statute of limitations or other

threshold bar the State failed to raise in answering a habeas petition. *Granberry v. Greer*, 481 U. S. 129 , 134 (1987) (exhaustion defense); *Day v. McDonough*, 547 U. S. 198 , 202 (2006) (statute of limitations defense). Does court discretion to take up timeliness hold when a State is aware of a limitations defense, and intelligently chooses not to rely on it in the court of first instance? The answer *Day* instructs is "no": A court is not at liberty, we have cautioned, to bypass, override, or excuse a State's deliberate waiver of a limitations defense. Id., at 202, 210, n. 11.

The Director's reliance on *Mayle v. Felix*, 545 U.S. 644, 656-69 (2005) and the doctrine of relating back to the original claims is inapplicable here as the issues brought in Masterson's Amended Petition relate back to the original issues in regard to his biological and psychological dysfunction. In summary judgment motion non-movant's may rely on affidavits of expert witnesses to oppose summary judgment. *Washington v. Armstong World Industry*, 839 F.2d 1121, 1123-24 (5th Cir. 1988). The attachments to Masterson's habeas petition are opinions by experts which demonstrate the biological and psychological issues that should have at least been developed and then evaluated whether or not it should presented at trial. In the first instance it was discovered by first writ counsel who failed to bring the claims in a state application.

The Director's response also does not take into account the Supreme Court's recent ruling in *Trevino v. Thaler*, 133 S.Ct. 1911 (2013) which applied the

doctrine set out in *Martinez v. Ryan*, 132 S.Ct. 1309 (2012). Although the Anti-Terrorism Effective Death Penalty Act precludes a habeas petitioner from relying on the ineffectiveness of his postconviction attorney as a ground for granting habeas relief, it does not stop a petitioner from using it to establish "cause" for his procedural default in failing to raise a claim. Petitioner's claim should have been brought by the <u>first</u> state habeas counsel and because said state habeas counsel failed to do so gives this Court jurisdiction to hear the claim.

The Supreme Court in anticipation of  the scenario presented by this petitioner set out  under *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991) that a federal habeas court <u>may</u> find the claim barred, not that the federal habeas court <u>must</u> find the claim barred. The mandatory bar is only applicable if those claims would be barred in state court which as set out above demonstrates that they would not necessarily be so.

In addition to the medical and psychological examinations presented by Petitioner in support of his habeas petition this Court has recognized that Masterson is not competent and has exhibited mentally dysfunctional behavior. (See Order #75 Dkt). The limitations period may be told in "rare and exceptional circumstances." *Felder v. Johnson*, 204 F.3d 168, 170-71 (5th Cir. 2000). The circumstances in this case are both rare and exceptional.  It is both a failure on trial counsel and especially on first writ counsel under *Trevino* for failing to develop

this evidence and present it in a previous application. Petitioner satisfies the "relation back" standard by raising the ineffective assistance of counsel claims based on the same evidence. See *United States v. Gonzales*, 592 F.3d 675, 680 (5th Cir. 2009). The language in *Gonzales* does not address the facts presented in this case. The claim at issue here relies on the same evidence wherein trial counsel failed to present it, then first writ counsel failed to challenge that lawyer's effectiveness in the first state proceeding under *Trevino*.

The Director did not challenge the issue then, resting in assurance that the Court of Criminal Appeals of Texas would bar the claims as a successive application under Article 11.071 § 5. The State has therefore waived any right to rely a procedural bar at this point. Rule 15(c) is designed to stop a state from manipulating the system of procedural bars in an all-out effort to block a petitioner from bringing legitimate Constitutional claims in an amended petition based on the same set of facts. In this case the Director relied on the Court of Criminal Appeals to reject the claims as a successive petition and now wants to argue a procedural bar which the Director waived in the first instance. This is the type of litigation end around that *Martinez v. Ryan*, 132 S.Ct. 1309 (2012) and *Trevino v. Thaler*, 133 S.Ct. 1911 (2013) were desinged to stop. Penalizing a petitioner, especially one with serious psychological and biological impairment for the failure of his lawyers

is offensive to the Constitution and the Director's procedural bar argument on page 8 cannot stand.

Finally, this Court dismissed the Director's original Answer and Motion for Summary Judgment without prejudice. ***The Director has failed to re-assert said Motion and has therefore waived any bar to this Court reaching the merits of the claims presented in both Masterson's original submission and his amended petition.***

## B. Petitioner's Contention Has Merit

The Director next argues Petitioner cannot meet the two prongs of *Strickland v. Washington*, 466 U.S. 668 (1984). The record before this Court proves beyond any doubt that both trial counsel and first habeas counsel's representation fell below an objective standard of reasonableness and the resulting prejudice was so serious as to deprive Petitioner of a fair trial, as well as, the ability to mount an effective Constitutional challenge. The evidence available to counsel from the very beginning of the serious psychological and biological damage of Petitioner Masterson should have been investigated and presented to the jury. This Court is well aware of the mental instability of Masterson.  As the record reflects it is damage that <u>did not</u> just appear out of nowhere, but has been evidenced since Masterson was a child. Trial counsel had the initial records and failed in his duty to

investigate Masterson's impairment(s). Trial counsel failed to prepare for it. It is not guessing in hindsight as the Director would cast this Court's role. As set out in Claim Eleven trial counsel, knowing the prosecution would bring the records into evidence did not even prepare to rebut it much less develop and utilize it as a defensive tool.

The evidence was developed by first writ counsel through Dr. Jerome Brown after reading through the psych evaluations of Dr. Day of the Texas Youth Commission Child Care System.

In the second instance, first writ counsel failed to bring the ineffectiveness of trial counsel as an issue of Constitutional magnitude. The holding in *Trevino* decided that in Texas ineffective assistance of counsel claims are to be brought in a first writ under Texas statute and appellate court precedent. The failure to do so gives Petitioner "cause" to overcome any procedural bar and this Court may reach the merits of the claim.

## C. Demonstration of Prejudice

The Director argues that at the time of Petitioner's trial Texas courts did not generally allow defendants to present evidence of mental defect in order to negate *mens rea*. (Id at page 12). Here the trial court was never given the option of making that ruling because trial counsel did not make an attempt to offer the

evidence and seek an instruction. Under the *Strickland* standard of reasonable representation a reasonable attorney would have at least investigated and developed the evidence. The Director argues that trail counsel did not present it when the facts are it was never investigated so there was no option to present it.

It is not about what the jury might have decided one way or another as the Director would leads this Court to believe. This is about the fact that the jury <u>was never presented with the evidence to make that determination</u>. Herein lay the prejudice. The Director argues one side of the issue assuming what the jury would have decided. Again, this is not the issue. The issue is that due to the failure of counsel the jury was never presented with opportunity to make the decision based on ALL the evidence. The prejudice is inherent in the failure to investigate by trial counsel in the first instance and in the second the failure of first writ counsel to bring the issue in a state application for a writ of habeas corpus. Id. *Trevino v. Thaler*, 133 S.Ct. 1911 (2013).

At page 15 the Director cites *Day v. Quarterman*, 566 F.3d 527 (5th Cir. 2009) and *Evans v. Cockrell*, 285 F.3d 370 (5th Cir. 2002) for the proposition Petitioner's ineffective assistance of counsel claim is premised on trial counsel's failure to call witnesses. This is not the claim at all.  The claims are a *failure* to investigate.  It is impossible to list witnesses to be called when no investigation was done.   Finally, the Director argues Masterson would have formed the mens

rea stating "there is no reasonable probability the jury could have determined that Masterson lacked the capacity to form intent had counsel presented evidence of organic brain damage." There are no facts to support this supposition. Without the evidence being investigated it could not have been presented to the jury, much less a determination being made at this point based on the affidavits of experts presented by writ counsel.  Summary judgment under Fed.R.Civ.P. 56, should be granted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Tuley V. Heyd*, 482 F.2D 590, 592-93 (5TH CIR. 1973). The Director presents no facts to support his Motion therefore this Honorable Court should issue and order of denial.

### D. Masterson's Claim Fourteen that Counsel Was Ineffective For Failing To Present Evidence That A Seizure Disorder Caused The Death of Honeycutt Is Not Time-Barred, Procedurally Defaulted, Or Meritless

Sections **A-C** are incorporated herein as the Director makes either the same or similar arguments as those previously set out in his Motion.  As set out above Petitioner has presented "cause" to overcome the time bar and any other procedural default.

The Director misreads Petitioner's claim.  It is the <u>failure to investigate and develop this evidence</u> by trial counsel. Failure to investigate leave no room for any

kind of evaluation of how to use this evidence, as well as, how to present it to the jury. The issue is not that it was not presented but that trial counsel did nothing at all toward investigating it. Then first writ counsel never followed up with the ineffective assistance of counsel claims of trial counsel which presents cause for this Court to review the issue.  The Director relies on the Texas abuse of writ doctrine which is exactly why first writ counsel is required to bring these claims. See *Tevino v. Thaler, supra.*

Next the Director relies on the testimony of Masterson himself. Based on the biological and psychological damage to Masterson, which this Court has taken judicial notice of, Masterson's competence to testify to anything is questionable.

At page 19 the Director sets out: "His claim is based on supposition and a leap of reasoning unsupported by anything in the record." There is nothing in the trial record ***because*** Masterson's trial counsel failed to investigate.  There is nothing in the record because first state writ counsel, while he had some evidence, failed to bring the claim. During these proceedings current writ counsel has made every effort to have the evidence incorporated into the record which should have been challenged on the first state writ but through the failure of first writ counsel the raise the claims of ineffective assistance of counsel at trial. Id. *Trevino.*

**E. Masterson's Claim That Counsel Was Ineffective For Failing To Rebut the TYC Records Is Not Procedurally Defaulted Nor Does It Lack Merit**

The Director's argument here is the same as set out throughout his Answer and Motion above. Petitioner again presents to this Court he has "cause" under *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991)  to overcome procedural default, if any, based on the Supreme Court's holding in *Trevino v. Thaler*, 133 S.Ct. 1911 (2013).

The Director admits on page 12, n. 5 that "it is arguable that this particular claim is not time barred because it contains a common core of operative facts…". It cannot be both ways.

Trial counsel failed to prepare to rebut the prosecutor's admission of the TYC records. A review of the record in this case will reveal trial counsel was unprepared to rebut the TYC records or at a minimum present them in a light favorable to the defendant. The records were submitted without challenge or rebuttal by counsel who knew or should have known the Masterson suffered from both biological and psychological mental impairment, including but not limited to severe seizures. The Director's argument claims trial counsel did not want to emphasize the information in the TYC records when the facts are the records demonstrate the inability of Petitioner to function due to his mental disabilities.

*Rompilla v. Beard*, 545 U.S. 347 (2005) has a direct application to this case. Like the file in *Rompilla* the TYC file was indicative of Masterson's mental health issues. Trial counsel knew full well the State would introduce the material and made no effort at all to investigate. The Director claims Masterson has not explained how counsel should have rebutted the TYC records. The affidavits attached to Petitioner's federal petition present such explanation on their face.

The Director's argument based on *Rompilla v. Beard* that the state court's decision on this issue was correct because the bad outweighed the good is an issue for a jury to decide, not an appellate court sitting as a thirteenth juror acting in hindsight. Due to trial counsel's failure Masterson's jury was never presented with the up side of these records which falls outside the *Strickland* standard of reasonableness and without a doubt prejudiced Petitioner in contravention of the Director's reliance on the language of *Harrington v. Richter*, 131 S.Ct. 770, 778 (2011) as there can be no reasonable argument that counsel satisfied *Strickland's* deferential standard. Therefore, the state court's denial cannot be upheld. The first paragraph of page 12 in the Director's answer and motion demonstrate the prejudice inherent in trail counsel's failure. The evidence, witnesses and rebuttal were never investigated much less presented.

In an all-out effort to bolster this position the Director relies on the single testimony of Ramona Weiss, Masterson's sister setting out that any other testimony would be cumulative under *Skinner v. Quarterman*, 528 f.3d 336, 345 n. 11 (5th Cir. 2008) and *Emory v. Johnson*, 139 F.3d 191, 197 (5th Cir. 2007). Expert testimony of Masterson's mental disabilities would not be cumulative because trial counsel never investigated nor presented any. Thus, it was not even an option upon which a sound strategy could be built or rejected.

The evaluation of Dennis Longmire, PhD is that of a "expert on future dangerousness." This evaluation was made without the benefit of the psychological and biological evidence now in the record before this Court.  Masterson's trial counsel should have done this and first writ counsel made an initial effort but failed to follow through.  Dr. Longmires evaluation may be true, but any validity hinges on the psychological impairment of Petitioner which has never been developed and introduced into the record. If Longmire had this information his conclusions in the evaluation would have been different. (SHCR 154).

On page 25 the Director sets forth Masterson's testimony at punishment (22 RR 84-85). As set out above, then, as now, the question of Masterson's competence to make decisions has yet to be decided.  The Director points to the testimony but avoids the underlying facts relating to Masterson's biological and psychological damage which began at an early age and has continued up to and into the present

as this Court has already noted.  The Director <u>assumes</u> Masterson would not have cooperated but provides no basis for the assumption. Further, the Director premises his position on the evidence presented by the State at trial as to future dangerousness all of which would have been offset had trail counsel done a proper investigation into Masterson's mental history beginning with the TYC records at issue here. Trial counsel made no preparation to rebut or offset the State's representation of the evidence. Masterson's past, present and any future acts must be interpreted in light of the evidence available but never developed by trial counsel, as well as, the failure of first state writ counsel to brings these claims in state court. Contrary to the Director's position Masterson's future dangerousness <u>is</u> <u>not</u> a given and it is not plausible that any jury would have imposed a death sentence if the jury followed the law.  This is especially important in light of the Supreme Court's prohibition against execution of the mentally retarded. *Atkins v. Virginia*, 536 U.S. 304 (2002).

The only reason the evidence appears overwhelming is due to the prejudice inherent through trial counsel's failure to investigate, prepare and present evidence to combat the State's presentation to the jury. See *Wiggins v. Smith*, 539 U.S. 510 (2003).

The Director's claim that this issue is barred because the Court of Criminal Appeals refused to hear the claims based on a state created procedure bar does not stand up for the purposes of summary judgment whose standard is based on meritorious facts. Petitioner has presented those facts to this Honorable Court and the Director's Motion for Summary Judgment should be denied.

## F. Post-Traumatic Stress Disorder

The Director's argument relies on the conclusion that Masterson "decided as a matter of trial strategy that this course of action would not be wise. And Masterson did not permit counsel to call Dr. Longmire because he did not want others blamed for his behavior." (Supp. Answer at 29). This Court has recognized that Masterson is not competent to make such decisions in regard to his representation which has been set out above.  It stands to reason that if Masterson is of questionable competence to represent himself in post-conviction proceedings then he was not competent to make decisions during the trial. Had of trial counsel done the investigation and had psychological and biological testing and evaluations done on Masterson he would have known this and been able to present it to the trial court.  Counsel's failure to do so meets and exceeds both prongs under *Strickland*.

The Director is incorrect by stating that Masterson has failed to offer evidence that he suffers from PTSD. Current writ counsel has filed numerous motions with this Court seeking to have testing done to develop this evidence which was not done by trial counsel and abandoned by first state writ counsel. Petitioner has also requested evidentiary hearing in order to present this evidence. The Director's argument and reasoning here does not meet his burden for a grant of summary judgment and this Honorable Court should deny the Motion, grant evidentiary hearing and proceed to the merits of Petitioner's claim.

## CONCLUSION

Based on Petitioner's original response to the Director's initial Motion for Summary Judgment (which was dismissed by this Court) and this Supplemental Response the Director has failed to meet the burden of proving that Petitioner's claims are not meritorious and his Motion for Summary Judgment should be denied by this Honorable Court.

Respectfully submitted,

/s/ Patrick F. McCann
Patrick F. McCann
Law Offices of Patrick F. McCann
909 Texas Ave, Ste. 205
Houston, Texas 77002
713-223-3805
713-226-8097 Fax

44

## CERTIFICATE OF SERVICE

On this the 9th day of December, 2013 a true and correct copy of the above and forgoing has been served on the Respondent, Woodson Dryden, Assistant Attorney General For Texas, Capital Litigation Section, P.O. Box 12548, Capitol Station, Austin, Texas 78711.

/s/ Patrick F. McCann
Patrick F. McCann
